United States District Court
Middle District of Florida
Ocala Division

**KYLE ROBERT MEADE,**

***Plaintiff,***

**v.** **NO. 5:25-cv-599-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

***Defendant.***

---

# Order

The plaintiff requests judicial review of a final decision by the Commissioner of Social Security denying his claims for child disability insurance benefits and supplemental security income. Doc. 1. He argues that the Administrative Law Judge (ALJ) erred in evaluating Dr. Robert Merrell's medical opinions. Doc. 16 at 4–10. The procedural history, evidence, and law are summarized in the ALJ's decision, Tr. 22–33, and the parties' briefs, Docs. 16, 23, and not fully repeated here.

## 1.

Section 405(g) details the scope of the court's review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner … or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner …, because of failure of the

> claimant or such individual to submit proof in conformity with any regulation prescribed …, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g) for claims for supplemental security income). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoted authority omitted). A court may not decide facts anew, make credibility findings, or reweigh the evidence. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).

**2.**

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ will consider supportability, consistency, the relationship with the claimant, any specialization, and "other factors," including evidence that a medical source is familiar with the other evidence in the claim or understands the disability program's policies and evidentiary requirements. *Id.* §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how she considered them. *Id.* §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2). Supportability concerns the support provided by the source issuing the opinion: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will

be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency concerns a comparison with other items in the record: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

**3.**

The plaintiff was born in August 2003. Tr. 32. He alleges that he has been disabled since birth, Tr. 278, and that his autism, attention deficit hyperactivity disorder (ADHD), and cleft lip limit his ability to work, Tr. 27, Tr. 318.

The plaintiff and his father testified at the administrative hearing. Tr. 40–70. The plaintiff provided this testimony. His autism hinders him socially and developmentally. Tr. 45. He gets nervous talking to someone, has a difficult time making eye contact, and has no "real-life" friends. Tr. 46. He has no problem interacting with his family or people he knows well. Tr. 46. When he was in the eighth grade, his mother decided to take him out of school because he was behind. Tr. 47. He had problems understanding and remembering what was being taught in school. Tr. 50. He tried to keep to himself and did not have "a big issue" interacting with other kids. Tr. 50. He can read, write, and do very basic math. Tr. 47–48. His father drives him around. Tr. 49. He has never applied for a driver's license or permit because he is afraid of driving. Tr. 48–49. He can take care of his personal needs, such as bathing, dressing, and shaving. Tr. 49. He spends all day playing video games and watching YouTube. Tr. 49. He helps his dad with doing the laundry, taking

out the trash, and checking the mail. Tr. 49. When he was in elementary school, he took medication to help with his attention, but he takes none now. Tr. 51.

The plaintiff's father provided this testimony about the plaintiff. He paces when someone tries to talk to him, likes to play video games and act like he is sword-fighting imaginary people, does not do well around people, and is afraid to go anywhere. Tr. 56. He took medication in school but stopped because he was like a zombie. Tr. 56–57. He was in special education classes, Tr. 59; but he could not function in school and was not learning anything, Tr. 57. He can use the microwave, bathe himself, and do laundry. Tr. 58. He can do minor chores, but he does not complete them. Tr. 59. He cannot tie his shoelaces or a garbage bag. Tr. 60.

In May 2024, Linda Bojarski, Psy. D., conducted a mental status examination and IQ test of the plaintiff. Tr. 538–41. The ALJ provided this summary of Dr. Bojarski's examination and testing:

> An examination and testing administered by [Dr.] Bojarski, … disclosed a Full-Scale IQ score of 84 on the Wechsler Adult Intellectual Scale IV [(WAIS-IV)] with a verbal comprehension index of 98, a perceptual reasoning index of 77, a working memory index of 71, and a processing speed of 84. The [plaintiff]'s intellectual functioning falls within the low average range and he demonstrated significant weakness in attention, concentration, mental control, and reasoning. His scaled score of five on the Digit Span subtest of the WAIS-IV (i.e., eight to 12 represents the average range) suggested moderate deficits in immediate memory, and his scaled score of 10 on the Comprehension subtest of the WAIS-IV suggested average judgment and common-sense reasoning skills. Despite the "suggested" moderate deficits in memory, there was no evidence of a thought disorder. His intellectual functioning was only low average, and he was oriented in all three spheres except he did not know the date. He performed mental control exercises slowly and with one error while reciting the alphabet, which required three times for him to complete which suggested mild to moderate deficits in concentration. He described his mood as neutral. His appetite is

> good. He has strong feelings of guilt. He denied any suicidal ideation, hallucinations and special powers. He described his energy level as moderate. Eye contact was intermittent. Affect was slightly restricted. Speech was clear and logical. His grooming was considered average. (Exhibit 6F [Tr. 538–42])[.]

Tr. 28.

Dr. Merrell treated the plaintiff from late July 2024 to early 2025. *See* Tr. 544–46, 555–56. In August 2024, Dr. Merrell provided his treatment notes and this letter to the Social Security Administration:

> [The plaintiff] is a kind man whose mental health disabilities very clearly prohibit him from acquiring/maintaining gainful employment. His mental impairments undermine his ability to maintain concentration/persistence and cope with work stressors. More significantly, he has limited capacity to interact meaningfully with coworkers. I humbly ask that you strongly consider his case.
>
> In my estimation, it would be unreasonable to expect that [the plaintiff] could maintain self-sustaining employment. The sudden withdrawal of his previous benefits appears to be contributing to significant and preventable psychological duress. Thus, I implore you to deeply consider his application for highly justifiable benefits. …

Tr. 543 (emphasis omitted).

The ALJ provided this summary of Dr. Merrell's treatment notes:

> On July 30, 2024, the [plaintiff] was seen by [Dr.] Merrell … at Greater Gainesville Counseling and Wellness Center, LLC. Mental status examination showed flat affect and anxious mood; poor remote memory; variable attention; hesitant speech; and preoccupied thought content but also fair insight and judgment; normal motor activity; normal thought processes and perception; appropriate behavior; normal appearance and appropriate dress; and he was oriented to person and place but impaired to time. (Exhibit 7F/2–4 [Tr. 544–46])[.]
>
> Follow-up counseling session in August 2024 noted the [plaintiff] demonstrated excellent insight regarding his interpersonal skills and "lack of patience" when interacting with others. He admits that

> interactions online are very stressful for him. He has been bullied in the past. He appeared visibly uncomfortable with this discussion of bullying. Thus, psychoeducation on therapy was provided. Then, the [plaintiff] opened up about feeling very uncomfortable with entering stores in the community. He said that leaving the house is hard for him, but is confident with playing video games. (Exhibit 7F/2 [Tr. 544])[.] Notes in September 2024, November 2024, and January 2025 showed the [plaintiff] continued mental health counseling sessions. (Exhibit 9F/2 [Tr. 555])[.]

Tr. 28–29.

In January 2025, Dr. Merrell completed a "Mental Disorders Source Statement" in which he opined that the plaintiff met the requirements of Listings 12.10 (autism spectrum disorder) and 12.11 (neurodevelopmental disorders). Tr. 548–53. Dr. Merrell provided this note:

> [The plaintiff] has a loving and supportive family. He does not appear capable of living independently or maintaining gainful employment. He cannot manage funds to which he is entitled. He has extreme limitation with managing himself and interacting socially. Thus, he suffered past bullying and current interpersonal distress. Beyond this, the current disruption in his funding has led him to develop significant fear in one day ending up homeless. I ask that we no longer put him through such needless stress.

Tr. 549.

For the autism spectrum disorder, Dr. Merrell checked "present" for medical documentation of "[q]ualitative deficits in verbal communication, nonverbal [c]ommunication, and social interaction" and "[s]ignificantly restricted, repetitive patterns of behavior, [i]nterests, or activities." Tr. 550. He checked "marked" to describe the plaintiff's limitations in the mental functioning areas of "[u]understand, remember, or apply information"; "[i]nteract with others"; and "[c]oncentrate, persist, or maintain pace." Tr. 550.

He checked “extreme” to describe the plaintiff’s limitations in the mental functioning area of “[a]dapt or manage oneself.” Tr. 550.

For the neurodevelopmental disorder, Dr. Merrell checked “present” for medical documentation of “[f]requent distractibility, difficulty sustaining attention, and difficulty organizing tasks” and “[s]ignificant difficulties learning and using academic skills.” Tr. 551. He checked “marked” to describe the plaintiff’s limitations in the mental functioning areas of “[u]understand, remember, or apply information”; “[i]nteract with others”; “[c]oncentrate, persist, or maintain pace”; and “[a]dapt or manage oneself.” Tr. 551.

For the direction, “Please further describe this patient’s restrictions with regard to the following work-related activities …,” Dr. Merrell checked “marked” to describe the plaintiff’s restrictions in these areas:

- “Understand/[r]emember short simple instructions”;
- “Carry out short simple instructions”;
- “Ability to remember locations and/or work like procedures”; and
- “Ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.”

Tr. 552. He checked “extreme” to describe the plaintiff’s restrictions in these areas:

- “Ability to make judgments based on simple work-related decisions”;
- “Ability to make simple work-related decisions”;
- “Ability to complete a normal workday/workweek without interruptions from psychologically based symptoms and to

perform at a consistent pace without an unreasonable number and length of rest periods";

- "Ability to tolerate and interact appropriately with the general public";
- "Ability to accept instructions and to respond appropriately to criticism from supervisors";
- "Ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extreme"; and
- "Ability to set realistic goals or to make plans independently of others."

Tr. 552. The statement defines "markedly limited" as: "The individual's ability to function independently, appropriately, effectively, on a sustained basis is seriously limited. In a vocational setting, this individual cannot be expected to function independently, appropriately, and effectively in the designated area on a regular and sustained basis (i.e., 8 hours a day/5 days a week, or equivalent schedule)[.]" Tr. 552. The statement defines "extremely limited" as: "The individual is not able to function independently, appropriately, and effectively on a sustained basis. This activity is totally precluded and would severely be affected even if the patient was not in a work[-]type setting[.]" Tr. 552.

Dr. Merrell estimated that the plaintiff "would likely be absent from work as a result of his impairments or treatments" for four or more days a month. Tr. 552.

The ALJ analyzed Dr. Merrell's 2024 letter:

> This opinion is not persuasive as it is not supported or consistent with the medical record or [plaintiff]'s wide range of activities of daily living. Dr[.] Merrell's treatment notes reflect complaints or subjective symptoms (Ex. 9F [Tr. 554–56]). Thus, his opinion is not

> supported. Moreover, his opinion is inconsistent with [plaintiff]'s activities of daily living (or [plaintiff]'s ability to tend to personal care independently, perform some household chores, do the laundry, make simple meals (sandwiches and frozen food), use a microwave, shop for items, play video games, and interact with family members. (Exhibits 5E [Tr. 329–42], 9E [Tr. 360–67])). His opinion is conclusory, speculative and not grounded on treatment or progress notes. The extent of limitations is not supported by the observable clinical signs on a one-time examination. This source mainly recorded complaints or subjective symptoms of the [plaintiff]. The [plaintiff] briefly acquired mental health counseling. He did not require crisis stabilization unit treatment, psychiatric hospitalization, or emergency room treatment for his mental health condition. No medication and significant psychiatric treatment were required for depression. Of further note, a statement by a medical source that the claimant is "disabled" or "unable to work" is not an opinion as to the nature and severity of the claimant's impairment, and therefore, an issue reserved to the Commissioner (20 C[.]F[.]R[. §§ ]404.1527(d)(e) and 416.927(d)(e)).

Tr. 30–31.

The ALJ summarized Dr. Merrell's medical source statement, Tr. 31, and provided this analysis:

> [Dr. Merrell's] opinion is not persuasive, as it is conclusory, speculative and not based on observable clinical signs on the examinations. As noted, his treatments [sic] notes only reflect complaints or subjective complaints. (Exhibits 7F/2 [Tr. 544], 9F [Tr. 554–56]). There are no observable clinical signs in his treatment notes or the record as a whole to support the extent of limitations he reported. Similarly, the record as a whole, including [the plaintiff's] wide range of daily activities, is not consistent with the extent of the limitations he reported. The record does suggest that [the plaintiff] experienced some degree of symptoms associated with autism, … ADHD, and developmental disorder, during the relevant period, and during a one-time examination, he exhibited some flat affect and anxious mood. There was evidence of variable attention, his speech was hesitant … and his thought content was preoccupied. However, he also exhibited fair insight and judgment, normal motor activity, and normal thought processes and perception. His behavior was described as appropriate. Appearance was normal and he was appropriately dressed. He was oriented to person and place but

> impaired to time. (Exhibit 7F/3–4 [Tr. 545–55]). As noted, he tends to his personal care independently, performs some household chores, does the laundry, makes simple meals (sandwiches and frozen food), shops for items, uses a microwave, plays video games, watches YouTube videos and television, and interacts with family members. (Testimonies; Exhibits 5E [Tr. 329–42], 9E [Tr. 360–67])[.]

Tr. 31–32.

The ALJ found the reports of two state agency psychological consultants "partially persuasive" and provided this explanation:

> State agency psychological consultants, Janice Miller, Ph.D., and James L. Meyers, Psy.D., opined that the [plaintiff] had moderate limitations in his ability to understand, remember, or apply information[;] moderate limitation in the ability to interact with others[;] moderate limitation in the ability to concentrate, persist, or maintain pace[;] and moderate limitation in the ability to adapt or manage oneself. Both concluded the [plaintiff] is able to remember and understand simple work procedures. He is able to carry out simple instructions and make simple decisions with support and supervision. He may have some difficulty sustaining focus to tasks, is likely to be uncomfortable around others but should be able to complete a normal workday/week within the above parameters. He is able to ask simple questions and should be able to work with a supervisor and maintain appropriate behavior and basic grooming and hygiene. He would perform better in a work setting with fewer social demands and may distract others at times due to his mental condition. He remains aware of normal hazards but will benefit from support when dealing with changes in the work setting, traveling and is setting realistic goals for himself. Overall, he is capable of performing simple routine, tasks within a well-structured work setting with fewer social demands. (Exhibits 1A [Tr. 71–78], 4A [Tr. 81–88], 6A [Tr. 90–97], 8A [Tr. 99–106]). The undersigned finds Drs. Miller and Meyers['s] opinions partially persuasive as the need for supervision or the need for well-structured work setting is not supported. He is not dysfunctional due to his mental health impairments. [The plaintiff] can tend to his personal care independently, performs some household chores, can do the laundry, make simple meals (sandwiches and frozen food), shop for items, play video games, watch YouTube videos and television, and interact with family members. (Testimonies; Exhibits 5E [Tr. 329–42], 9E [Tr. 360–67])[.] Testing administered by [Dr.] Bojarski, … disclosed a

> Full-Scale IQ score of 84 on the [WAIS-IV]. His intellectual functioning was within the low average range. On the exam, he exhibited neutral mood and slightly restricted affect, intermittent eye contact, no thought disorder, no suicidal ideation, hallucinations and special powers, and he was oriented in all three spheres except the date. Grooming was described as average. (Exhibit 6F [Tr. 538–42])[.] The limitations that can reasonably be found based on [the plaintiff]'s mental impairments are consistent with the RFC[.]

Tr. 29–30 (errors in original).

The ALJ analyzed Dr. Bojarski's opinion:

> Dr. Bojarski, opined on May 21, 2024, … that the [plaintiff] is currently functioning intellectually at the 14th percentile for his peer group placing him in the low average range; that the [plaintiff] demonstrated statistically significant weakness in attention, concentration, mental control and reasoning and that the [plaintiff] did not appear capable of independent management of any funds to which he is currently entitled (Ex[.] 6F [Tr. 538–42]). However, Dr. Bojarski failed to provide an opinion in functional terms, identifying what the [plaintiff] can functionally do or not do based on the test results, the examination, the record as a whole and [the plaintiff]'s activities of daily living. Thus, her opinion is not supported, consistent or persuasive. However, her observations and the medical record as a whole are consistent with the [RFC] found herein considering that she observed that the [plaintiff] had clear and logical speech; no evidence of a thought disorder; and put good effort during exam; and that she believed that test results are accurate reflection of [the plaintiff]'s functioning. Her opinion that a scaled score of five on the Digit Span subtest of the WAIS-IV (i.e., eight to 12 represents the average range) "suggested" moderate deficits in immediate memory is inconsistent with the wide range of [the plaintiff]'s activities of daily living. Furthermore, her opinion that the [plaintiff] demonstrated "statistically significant weakness" in attention, concentration, mental control and reasoning is not persuasive as she explained the IQ test results as the [plaintiff] being low average. Also, the "statistically significant weakness" appears inconsistent with [the plaintiff]'s ability to tend to personal care independently, perform some household chores, do the laundry, make simple meals (sandwiches and frozen food), use a microwave, shop for items, play video games, and interact with family members. (Exhibits 5E [Tr. 329–42], 9E [Tr. 360–67])[.]

Tr. 30.

Elsewhere, the ALJ found that the plaintiff has a mild limitation in the area of "understanding, remembering, or applying information," providing this explanation:

> [The plaintiff]'s father reported that the [plaintiff] needs reminders to take care of personal needs and grooming, for taking medications, and going to places. [The plaintiff]'s father asserted that the [plaintiff] cannot pay bills, count change, handle a savings account, and use a checkbook/money orders but can shop for items in the store. (Exhibits 5E [Tr. 329–42], 9E [Tr. 360–67])[.] On exam, there is a reference to poor remote memory, but it was also found that the [plaintiff] had normal thought processes and perception (Exhibit 7F/2–4 [Tr. 544–46]) with fair insight and judgment (Exhibit 7F/2–4 [Tr. 544–46]). In addition, the [plaintiff] is able to perform activities of daily living independently and spends the day playing video games, and watching YouTube (Ex. 7F at 2–3 [Tr. 544–45]) The undersigned finds the [plaintiff] has mild limitations in this area. The [plaintiff] was able to give significant details about h[is] medical history to the consultative examiner.

Tr. 25.

The ALJ found that the plaintiff has a moderate limitation in the area of "interacting with others," providing this explanation:

> The [plaintiff] spends time with others in person. He only spends time with family members. He cannot go out alone and prefers someone to accompany him. However, there are no problems getting along with others including authority figures. (Exhibits 5E [Tr. 329–42], 9E [Tr. 360–67])[.] [Dr.] Bojarski … observed the [plaintiff]'s speech was clear and logical. (Exhibit 6F [Tr. 538–42]), but [his] speech was described also as hesitant. (See Exhibit 7F/2–4 [Tr. 544–46]). State agency psychological consultants found moderate restrictions, and the undersigned concurs. DDS opined that the [plaintiff] had moderate limitations in the ability to interact appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Exhibits 1A [Tr. 71–78], 4A [Tr. 81–88], 6A [Tr. 90–97], 8A [Tr. 99–106])[.]

Tr. 25.

Likewise, the ALJ found that the plaintiff has a moderate limitation in the area of "concentrating, persisting or maintaining pace," providing this explanation:

> It has been alleged that the [plaintiff] has problems completing tasks, concentrating, following instructions, and understanding, and that [he] cannot handle stress or changes in routine, and cannot follow written or spoken instructions. (Exhibits 5E [Tr. 329–42], 9E [Tr. 360–67])[.] There is evidence of a preoccupied thought content, and variable attention. However, the [plaintiff] has been described as oriented to person and place but impaired to time, with fair insight and judgment; normal motor activity; and normal thought processes and perception. (Exhibit 7F/2–4 [Tr. 544–46])[.] An examination and testing administered by [Dr.] Bojarski … disclosed a Full-Scale IQ score of 84 on the [WAIS-IV] with a verbal comprehension index of 98, a perceptual reasoning index of 77, a working memory index of 71, and a processing speed of 84. She indicated that [the plaintiff]'s intellectual functioning falls within the low average range. Mental status examination noted [his] eye contact was intermittent. Affect was slightly restricted. Speech was clear and logical. There was no evidence of a thought disorder. He was oriented in all three spheres except he did not know the date. (Exhibit 6F [Tr. 538–42])[.] State agency psychological consultant found moderate restrictions and the undersigned concurs. (Exhibits 1A [Tr. 71–78], 4A [Tr. 81–88], 6A [Tr. 90–97], 8A [Tr. 99–106])[.]

Tr. 25–26.

The ALJ found that the plaintiff has a mild limitation in the area of "adapting or managing oneself," providing this explanation:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being. In the present case, the record shows that the [plaintiff] was able to navigate throughout the day, despite his mental health symptoms. For example, [he] is independent in personal care (i.e., bathing, grooming, dressing, feeding himself), and performs activities of daily living independently, including preparing and making simple meals (i.e., making sandwiches and microwave food), doing the laundry,

> cleaning his room, taking out trash, and shopping. He shops for food in stores. He gets around by walking or riding in a car. Hobbies consist[] of playing video games and watching television. (Exhibits 5E [Tr. 329–42], 9E [Tr. 360–67])[.] The consultative examiner, [Dr.] Bojarski, … described the [plaintiff]'s grooming as average. (Exhibit 6F [Tr. 538–42])[.] His appearance was normal and he was appropriately dressed. (Exhibit 7F/2–4 [Tr. 544–46])[.] Thus, the record reveals mild limitations in this area.

Tr. 26.

The ALJ found that the plaintiff has the RFC to perform "a full range of work at all exertional levels" with a limitation to "performing simple work with occasional contact with coworkers and the general public." Tr. 26.

The ALJ explained that the plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms … are inconsistent because the medical evidence fails to substantiate the asserted limitations or document a level of functional restriction incompatible with sustained work activity." Tr. 29. She continued, "Although the evidence documents the [plaintiff] suffers from autism, [ADHD], and developmental disorder, it fails to support a finding that these conditions have functionally restricted [him] to a level incompatible with sustained work activity within the limitations of the assessed [RFC]." Tr. 29. She found that the plaintiff's "[s]ubjective complaints of functional limitations are disproportionate to the medical evidence and are not fully consistent considering both medical and other evidence of record." Tr. 29.

**4.**

Contrary to the plaintiff's argument, the ALJ properly considered and explained the persuasiveness of Dr. Merrell's opinions, as shown in the excerpts above.

The plaintiff challenges the ALJ's supportability finding for Dr. Merrell's 2025 medical source statement as unsupported by substantial evidence, arguing that Dr. Merrell's objective mental status examination findings in a July 2024 treatment note support the marked and extreme limitations he assessed for the plaintiff. Doc. 16 at 7–8. The argument is unpersuasive. The plaintiff, citing only the first three sentences of the ALJ's analysis, *see* Doc. 16 at 7–8, fails to acknowledge that the ALJ considered the examination findings on which the plaintiff relies—i.e., that the plaintiff's affect was flat, his mood was anxious, he was oriented to person and place but impaired to time, his remote memory was poor, he had variable attention, his thought content was preoccupied, and his speech was hesitant, Tr. 31. The ALJ continued and considered Dr. Merrell's observations that the plaintiff exhibited fair insight and judgment, normal motor activity, normal thought processes and perception, appropriate interview behavior, normal appearance, and appropriate dress. Tr. 31. This evidence suffices to support the ALJ's finding that Dr. Merrell's own observations do not support the marked and extreme limitations he assessed in the medical source statement.

The plaintiff challenges the ALJ's consistency finding for the same medical source statement, arguing that the ALJ erred by failing to discuss "any other medical evidence of record[.]" Doc. 16 at 8–9. This argument likewise is unpersuasive. The ALJ explained that the record as a whole, including the plaintiff's wide range of daily activities, contains no observable clinical signs to support, and is inconsistent with, Dr. Merrell's assessment of marked and extreme limitations. Tr. 31. The ALJ's explanation followed the analyses of the prior administrative medical findings and Dr. Bojarski's opinion, none of which assessed marked or extreme limitations. Tr. 29–30; *see* Tr. 71–78, 81–88 (initial disability determinations); Tr. 90–97, 99–106 (reconsidered disability

determinations); Tr. 538–42 (Dr. Bojarski's opinion). The case on which the plaintiff relies, *Vicente v. Commissioner of Social Security*, No. 6:22-cv-1057-LHP, 2023 WL 2864407, at *6 (M.D. Fla. April 10, 2023), *see* Doc. 16 at 8–9, is non-binding and unpersuasive. In *Vicente*, the court held that the ALJ "completely failed to address the consistency factor and whether [the doctor]'s opinion was inconsistent with the remainder of the record." 2023 WL 2864407, at *5. Here, the ALJ properly considered the consistency of Dr. Merrell's opinions compared to the record as a whole. Remand on this basis is unwarranted.

**5.**

The Commissioner's decision is **affirmed**. The clerk is **directed** to enter judgment for the Commissioner of Social Security and against Kyle Robert Meade and close the file.

**Ordered** in Jacksonville, Florida, on July 22, 2026.

Patricia D. Barksdale
*United States Magistrate Judge*